**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

SNOWIZARD, INC.                           CIVIL ACTION

VERSUS                                    NO. 11-515

RON ROBINSON D/B/A RAGGS SNO-CONE         SECTION "B"(2)
SUPPLIES, JULIE K. DOTY D/B/A
RAGGS SNO-CONE SUPPLIES, RAGGS
SUPPLY LP D/B/A RAGGS SNO-CONE
SUPPLIES, & LOTY MANAGEMENT, LLC

<u>ORDER AND REASONS</u>

Before the Court is Defendants' Motion to Dismiss Under Rule 12(B)(6) (Rec. Doc. No. 11) and Defendants' Motion for Sanctions Under Rule 11 (Rec. Doc. No. 13), both of which are opposed. (Rec. Doc. Nos. 14 and 15). For the following reasons,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Rec. Doc. No. 11) and Defendant's Motion for Sanctions (Rec. Doc. No. 13) are **DENIED.**

This case arises from trademark infringement, unfair competition, trademark dilution, and defamation allegedly incurred by the Plaintiff through the Defendants' sale of allegedly counterfeit products bearing the name "SNOWIZARD." (Rec. Doc. No. 1, at ¶ 22). Plaintiff claims to have used the trademark SNOWIZARD in interstate commerce and in connection with its products since 1945. *Id.* at ¶ 9. Additionally, Plaintiff claims to have acquired a Certificate of Registration for the trademark SNOWIZARD for use on and in connection with "food flavorings" on June 2, 2009. *Id.* at ¶ 10. Plaintiff also asserts that it packages snowball

flavoring concentrates in quart- and gallon-sized plastic bottles with tamper-evident, sealed caps that include printed product labels bearing the SNOWIZARD trademark and complying with Food and Drug Administration food labeling regulations. *Id*. at ¶ 19. Plaintiff alleges that Defendants Robinson, Doty, and Raggs Sno-Cone Supply (collectively referred to as "Raggs") had, at all pertinent times, actual and constructive knowledge of SnoWizard's use and ownership of the trademark SNOWIZARD in connection with food flavorings. *Id*. at ¶ 16. Plaintiff further asserts that Defendants are in the business of distributing, selling, and reselling snowball products, including snowball flavoring concentrates, and since about 1991 has purchased snowball flavoring concentrates from Plaintiff for resale to snowball vendors. *Id*. at ¶ 17, and ¶ 18.

Pertinent to these asserted facts, Plaintiff claims that in or about May 2010 it received a complaint from a snowball vendor regarding six bottles of SnoWizard flavoring concentrates that the vendor allegedly purchased from Raggs. *Id*. at ¶ 20. The vendor complained to Plaintiff that the flavoring concentrates vendor allegedly purchased from Raggs did not match flavor names on the labels. *Id*. Upon Plaintiff's receipt and inspection of the six bottles of flavoring concentrates, it reached the conclusion that Raggs had repackaged flavoring concentrates in quart- and half-gallon sized plastic bottles that lacked tamper-evident, sealed

caps. *Id.* at ¶ 21. Instead, the bottles were sealed with clear packaging tape and lacked the disclosures required by the FDA food labeling regulations – mandates that Plaintiff claims to follow stringently. *Id.* Further, the labels on the bottles contained "misspellings of SnoWizard flavor names, display[ed] inferior quality and generally drab appearances, and show[ed] flavor names that did not match the flavoring concentrates contained in the bottles." *Id.* Along with these characteristics, the bottles' labels also displayed the SNOWIZARD trademark. *Id.*

From these allegations, Plaintiff claims that Raggs's use of allegedly counterfeit labels bearing the trademark of SNOWIZARD in commerce was "likely to injure SnoWizard's business reputation, to dilute the distinctive quality of SnoWizard's trademark, and to tarnish the reputation of the mark." *Id.* at ¶ 22. Plaintiff further alleges that Raggs's use of counterfeit labels "was likely to cause confusion and mistake among snowball vendor consumers; was likely to deceive snowball vendor consumers as to the origin, sponsorship, and approval of Raggs's commercial activities by SnoWizard; and misrepresented the nature, characteristics, and qualities of Raggs's and SnoWizard's commercial activities." *Id.* Thus, Plaintiff demanded that Raggs cease and desist selling repackaged SnoWizard flavoring concentrates and destroy counterfeit labels. *Id.* at ¶ 23.

Plaintiff claims that thereafter Raggs told vendor customers

3

that Raggs no longer sold Plaintiff's products because Raggs experienced problems with Plaintiff's ability to supply and deliver products timely. *Id.* at ¶ 24.

As a result of Raggs's alleged actions, Plaintiff claims to have suffered damages and has been deprived of substantial gains and profits. *Id.* at ¶ 26. Therefore, Plaintiff levies four counts against Raggs in its complaint: (i) federal trademark infringement in violation of 15 U.S.C. § 1114, (ii) violation of federal unfair competition pursuant to 15 U.S.C. § 1125(a), (iii) federal dilution of trademark in violation of 15 U.S.C. § 1125(c), and (iv) defamation in violation of La. C.C. art. 2315 and "the state common law of defamation." *Id.* at ¶¶ 29-41.

Plaintiff seeks the following remedies: (i) preliminary and permanent injunction of Defendants' alleged use of counterfeit products bearing Plaintiff's trademark SNOWIZARD, (ii) an order that Defendants identify all customers to whom they allegedly sold products having counterfeit labels bearing Plaintiff's trademark SNOWIZARD along with an order that Defendants notify such customers that the sale of such counterfeit products was not authorized by Plaintiff, (iii) an order that Defendants report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the preliminary and permanent injunctions within thirty days after service of the preliminary and permanent injunctions, (iv) an order requiring Defendants to

4

account for and pay over to Plaintiff all gains, profits, and advantages realized by Defendants and an award for all damages that Plaintiff has sustained as a result of the Defendants' alleged actions or alternatively an award of statutory damages, (v) an award of three times the damages sustained by Plaintiff, together with reasonable attorney's fees and pre- and post-judgment interest, costs, and expenses, (vi) an award of reasonable attorney's fees in connection with this matter, (vii) preliminary and permanent injunction against Defendants' alleged continuing publication of allegedly false and defamatory statements against Plaintiff, (viii) an order for Defendants to identify to the Court and Plaintiff all customers to whom Defendants allegedly published false and defamatory statements along with an order that Defendants notify such customers in writing that such statements were false, (ix) an award of damages to Plaintiff for injury to its business reputation and for loss of business income in amounts to be proved at trial, plus litigation expenses, court costs, and legal interest incurred by Plaintiff as a result of the allegedly defamatory statements made by Defendants, and (x) an award of such other and further relief as this Court deems just and equitable in the premises and all such relief to which Plaintiff is entitled. *Id*. at ¶ 42.

**I.   Motion to Dismiss Under Rule 12(b)(6)**

Through the introduction of new and additional evidence,

Defendants make a multi-pronged attack on Plaintiff's Complaint. Defendants first contend that the contents in the mislabeled bottles of flavor concentrate are SNOWIZARD flavors and thus genuine SNOWIZARD products. (Rec. Doc. No. 11-1, at 3-4). According to Defendants, Plaintiff has failed to state a cause of action for trademark infringement and unfair competition under the Lanham Act because Defendants were licensees selling "genuine goods bearing a true mark." *Id*. at 4. Defendants point to the course of conduct between the parties, beginning in 1991, in order to argue that a licensing agreement existed between the parties and that consumer confusion – a necessary element for trademark infringement and unfair competition – did not and could not result from Defendants' actions. *Id*. at 4-6, 7. Defendants additionally forward arguments that prescription and the equitable doctrine of laches prohibit Plaintiff from bringing action. *Id*. at 6, 7.

Defendants then argue that Plaintiff failed to state a claim for trademark dilution under the Lanham Act because Plaintiff's mark is not "famous" within the meaning of the Act and Plaintiff failed to plead that its mark is "famous." *Id*. at 8. Further, Defendants point to the plain language of the Trademark Dilution Revision Act of 2006 to forward two arguments regarding the applicability of the Act: first, Defendants' use of Plaintiff's mark occurred before the mark became famous, so the Act does not apply; second, Defendants began using Plaintiff's mark in commerce

before the date of enactment of the Act, so the Act does not apply. *Id.* at 9.  Defendants also argue that Plaintiff is not entitled to "additional remedies" under the Act, and that Plaintiff's demand for injunctive relief under the Act is moot.  *Id.* at 7, 9.

Defendants then argue that Plaintiff failed to allege facts necessary to plead an action for defamation under Louisiana law. *Id.* at 9-10.  Defendants claim that the statement included in Plaintiff's Complaint is not defamatory because it was the truth. *Id.*  Defendants further argue that Plaintiff failed to specify why Louisiana law should apply to this case, and even if Louisiana law applies, Plaintiff cannot establish the requisite elements to state a *prima facie* case for defamation under Louisiana law.  *Id.* at 11-12.

Finally, Defendants argue that Defendant Ron Robinson transferred his interest in Raggs Sno-Cone Supplies to entities controlled by Defendant Julie Doty in 2005.  *Id.* at 11.  Thus, Defendants assert that Ron Robinson is not properly made a defendant in this action.  *Id.*

Plaintiff first objects to the Court's potential consideration of "unauthenticated and incompetent" evidence offered by Defendants in their Memorandum in Support of Motion to Dismiss.  (Rec. Doc. No. 14, at 1-2).  Plaintiff claims that if the Court considers this evidence, then the Court must treat Defendants' motion to dismiss

as one for summary judgment.[1]  *Id*.

Plaintiff argues that the Complaint states claims for trademark infringement under 15 U.S.C. § 1114(1) and unfair competition under 15 U.S.C. § 1125(a). (Rec. Doc. No. 14, at 7-8). In support of this contention, Plaintiff claims that Defendants' argument lacks merit because the Complaint provides well-pleaded allegations that the products sold by Defendants were not "genuine goods bearing a true mark" due to Defendants' repackaging of snowball flavoring concentrates in "defective packages" bearing counterfeit product labels.  *Id*. at 8-9.

Plaintiff next asserts that its Complaint states a claim for dilution of trademark.  *Id*. at 12.  In support of this argument, Plaintiff claims that SnoWizard's trademark is indeed "famous" within the meaning of the Trademark Dilution Revision Act of 2006. *Id*. at 13.  Plaintiff further contends that whether or not Defendants have stopped diluting Plaintiff's trademark is irrelevant to Plaintiff's right to injunctive and other relief under the Lanham Act.  *Id*.

Plaintiff next states that its reference to common law in its Complaint was to Texas common law, and further argues that it has sufficiently pleaded a claim for defamation under either Texas or

---

[1]Plaintiff states that if this Court considers the matters outside the pleadings that Defendants presented in the memorandum in support of their motion, that pursuant to Rule 12(d), Plaintiff be given a reasonable opportunity to present all the material that is pertinent to the motion. (Rec. Doc. No. 14, at 17).

Louisiana law.  *Id*. at 15-17.

Finally, Plaintiff requests that it be given leave to amend its complaint "as may be necessary to state a claim for which relief may be granted if this Court grants the defendants' motion in part or in whole."  *Id*. at 17.

A.    *Motion to Dismiss Standard*[2]

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   " 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' "  *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (internal quotation marks omitted).  The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief.  *Iqbal*, 129 S.Ct. at 1950.  First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*  Legal conclusions "must be supported by

---

[2] Because the Court does not consider the evidence outside of the pleadings offered by Defendants, it need not convert the instant motion to one for summary judgment.

9

factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Upon identifying the well-pleaded factual allegations, courts then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B. *Federal Trademark Infringement*

Trademark law is designed to protect the public "from confusion about a product's source and, relatedly, to protect trademark-owners' investment in the goodwill associated with their marks." *ICEE Distrib., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 846 (5th Cir. 2006). The Lanham Act § 32(1), 15 U.S.C. § 1114 provides a cause of action for infringement of a registered trademark in pertinent part as follows:

> (1) Any person who shall, without the consent of registrant-
>
> > (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or

services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable limitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

The Fifth Circuit has fashioned a two-part test that a plaintiff must satisfy in order to successfully assert an infringement claim under the Lanham Act § 32(1). *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010) (citing *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).  First, the plaintiff must "establish ownership in a legally protectible mark, and second, . . . show infringement by demonstrating a likelihood of confusion." *Id.* at 235-36 (citing *Smack Apparel*, 550 F.3d at 474).

The parties do not dispute the fact that Plaintiff has established ownership in a legally protectible mark, thus meeting the first part of the *Amazing Spaces* test. *See* 608 F.3d at 235-36.

11

In its Complaint, Plaintiff asserts that Defendants infringed upon its trademark by offering for sale and advertising for sale defectively packaged snowball flavoring concentrates bearing the registered mark SNOWIZARD.  Plaintiff claims that the sale of such defectively packaged goods was likely to cause confusion and deception as to the source of Defendants' goods.  However, Defendants argue that trademark law does not even apply in the current proceeding.  According to Defendants, the authorized resale of "genuine goods bearing a true mark" does not give rise to trademark infringement; thus, the repackaging of Plaintiff's products is not actionable.  Hence, the issue becomes whether Defendants were authorized to use the trademark and whether the repackaged products contained "genuine goods bearing a true mark."

The Fifth Circuit has recognized as a general principle that "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993) (quoting *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991)).  The court in *Matrix* determined that a purchaser can resell a mark owner's product without incurring liability under the Lanham Act for trademark infringement or unfair competition.  *See, e.g., A Touch of Class Jewelry Co., Inc. v. J.C. Penney Co., Inc.*, 1999 WL 707723 (E.D. La. 1999).  The product resold by the defendant in *Matrix* was

genuine but not resold with the mark owner's consent.  *Matrix*, 988 F.2d at 592-93.   The plaintiff in *Matrix* "made no showing or allegation that the products [were] counterfeit, or that [the defendant] ha[d] tampered with them in any way." *Id.* at 590.   The court found that merely reselling the genuine products without more culpable conduct did not cause the consumer confusion required to successfully assert a trademark infringement action.   *Id.*

In regards to the issue before this Court, Plaintiff specifically alleges that Defendants used the SNOWIZARD trademark while reselling *defectively packaged* goods.   (Rec. Doc. No. 1, ¶ 30).   As noted by the court in *Matrix*, goods that are resold can become defective and lose their "genuine" quality and lead to consumer confusion.   988 F.2d at 590-91.   *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980) (defendant prohibited from selling bulk oil under Shell trademarks because the distributor did not observe the strict tank and line cleaning requirements that Shell required of its authorized distributors); *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2 392 (2d Cir. 1986) (shoes imported by defendant were not "genuine" because they had not undergone the careful quality inspection required by plaintiff mark owner); *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131 (D. Colo. 1980) (Coors beer sold by the defendant distributor was not "genuine" because defendant did not maintain the careful refrigeration requirements in transporting and storing the beer as

13

mandated by Coors).

The court in *Matrix* stated that, "[t]he oil, shoes, and beer from *Shell*, *El Greco*, and *Coors* all contained or could potentially contain a latent product defect due to the unauthorized distributor's failure to observe the manufacturer and mark owner's rigorous quality control standards." 988 F.2d at 591. Because a "consumer would not necessarily be aware of the defective condition" caused by the failure of the reseller to adhere to the mark owner's rigorous quality control standards, the consumer "would therefore be confused or deceived." *Id*.

Moreover, the Supreme Court addressed the issue of repackaging goods and its relationship to trademark law long ago in *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924). The question in *Coty* was whether the defendant's repackaging of the plaintiff-manufacturer's products into smaller containers, which it then sold, amounted to an infringement on the plaintiff's trademark. *Id*. at 366-67. The Court found that such an action does not amount to trademark infringement because "[t]he defendant of course by virtue of its ownership had a right to compound or change what it bought, to divide either the original or the modified product, and to sell it so divided." *Id*. at 368. However, this proposition does not provide a "blank slate" for a purchaser to engage in repackaging that is automatically immune from an action under trademark law. *Coty* has been interpreted to require those who repackage goods and

14

sell them under the manufacturer's mark to include notice that the item has been repackaged. *See Farouk Systems Inc. v. Target Corp., Inc.*, 2008 WL 181130 (5th Cir. 2008); *Brilliance Audio v. Haights Cross Commc'ns*, 474 F.3d 365 (6th Cir. 2007). The language in *Coty* makes this point explicit: "[i]f the defendant's rebottling the plaintiff's [product] deteriorates it *and the public is adequately informed who does the bottling*, the public, with or without plaintiff's assistance, is likely to find out." *Coty*, 264 U.S. at 369 (emphasis added). As explained by the Sixth Circuit, such notice lets the consumer know that the purchaser has repackaged the trademarked product; however, absent such notice, the public may associate the trademark owner with a "product that is not of the same quality as the original trademarked item." *Brilliance Audio*, 474 F.3d 365 at 370.

Due to the fact that goods can become defective by failure to adhere to quality control standards and thus lose their "genuine" quality, Plaintiff has asserted well-pleaded facts that raise a triable issue that may entitle Plaintiff to relief under the applicable law. Plaintiff asserts that the labels affixed to the repackaged bottles of flavor concentrate are counterfeit and render the product in the containers defective, resulting in consumer deception as to the source of Defendants' goods. (Rec. Doc. No. 1, at ¶ 31). Plaintiff's Complaint states with particularity the steps that Plaintiff takes to ensure the quality of its product.

Plaintiff packages its flavor concentrates in tamper-evident bottles and complies with label requirements mandated by the FDA.  (Rec. Doc. No. 1, at ¶ 19).  Plaintiff alleges that Defendant repackaged flavor concentrates presumably manufactured by Plaintiff and sold the repackaged goods in smaller-sized bottles that lacked tamper-evident, sealed caps and the FDA-required food labels.  The materials before the Court are silent as to whether Defendants affixed a notice that they had repackaged Plaintiff's products along with the labels bearing the SNOWIZARD mark.  Thus, Plaintiff has met the second part of the *Amazing Spaces* test by showing a possibility of infringement through confusion.  *See Amazing Spaces*, 608 F.3d at 235-36.

C.   *Federal Unfair Competition*

In addition to providing a cause of action for trademark infringement, the Lanham Act, 15 U.S.C. § 1125(a) also provides a cause of action for unfair competition regardless of registration of a mark.  In pertinent part, the Act states:

> (a) Civil action
>> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or misleading representation of fact, which—
>>
>>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

> services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a). Unfair competition refers to situations in which a "defendant pass[es] of his goods or services as those of the plaintiff by virtue of substantial similarity between the two," leading to consumer confusion. *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 701 (5th Cir. 1981) (citing *Boston Prof'l Hockey Assoc'n v. Dallas Cap & Emblem Mfg. Co.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (internal omissions and quotations omitted). An action for unfair competition applies to unregistered marks when the "unregistered marks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source." *Boston Prof'l Hockey Assoc'n v. Dallas Cap & Emblem Mfg. Co.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (quoting *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 147 (2nd Cir. 1956) (internal quotations omitted). Thus, while broader than the law of federal trademark infringement, the law of federal unfair competition under the Lanham Act § 43(a), 15 U.S.C. § 1125(a), shares similar elements – *i.e.*, confusion – to an action for federal

trademark infringement.  For this reason, "the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston*, 510 F.2d at 1010.  *See also Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 386 (5th Cir. 1977) ("[B]oth [actions] turn primarily on the likelihood of customer confusion.").

As set forth above, Plaintiff has sufficiently stated a claim for trademark infringement, particularly the element of confusion. Accordingly, Plaintiff has adequately stated a claim for unfair competition under the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

D.  *Defenses*

Defendants claim at multiple points in their Memorandum in Support of Dismissal Under Rule 12(b)(6) (Rec. Doc. No. 11-1) and in their Reply Memorandum (Rec. Doc. No. 19) that Plaintiff's actions brought under the Lanham Act for federal trademark infringement and federal unfair competition have either prescribed and/or that the equitable doctrine of laches prevents Plaintiff from bringing the current proceeding.

1.  *Laches*

"Laches is commonly defined as an inexcusable delay that results in prejudice to the defendant." *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 153 (5th Cir. 1985). "Laches comprises three elements: (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice

to the alleged infringer caused by the delay." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000) (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)). In *Westchester Media*, the court found that laches did not apply when an infringer registered a mark in 1975 for an "equestrian sports and lifestyles" magazine and the harmed party did not register its objections to the mark's use until 1997. *Id*. Despite the fact that the harmed party had a long familiarity – beginning in 1975 – with the mark's use, the court reasoned that the harmed party did not learn of the particular infringement until June of 1997, and registered a cease and desist letter in September of 1997. *Id*. Thus, because the court found that the harmed party did not delay in asserting its trademark rights, the infringer could not establish any of the three elements above. *Id*.

According to Plaintiff's Complaint, Plaintiff did not learn of the alleged infringement of its mark until May 2010. (Rec. Doc. No. 1, at ¶ 20-21). Plaintiff claims that upon discovering the alleged infringement, it demanded that Defendants cease and desist selling any repackaged snowball flavoring concentrates manufactured by Plaintiff. *Id*. at ¶ 23. Plaintiff then filed the current action with this Court on March 3, 2011. Defendants, however, allege that Plaintiff knew of the alleged infringement beginning in 1991, when the relationship between the parties began. Plaintiff acknowledges on the face of the Complaint that it knew of Defendants' resale of

19

its snowball flavoring concentrates since about 1991. *Id*. at ¶ 18.
However, no materials considered by the Court indicate that
Plaintiff knew of Defendants' repackaging of its snowball flavoring
concentrates until May 2010. Therefore, Plaintiff's well-pleaded
facts do not indicate the applicability of the equitable doctrine
of laches.

    *2. Prescription*

    A federal four-year statute of limitations applies to cases
arising under federal law enacted after December 1, 1990. 28 U.S.C.
§ 1658 ("Except as otherwise provided by law, a civil action arising
under an Act of Congress enacted after the date of enactment of this
section may not be commenced later than 4 years after the cause of
action accrues."). Yet, because the operative elements of the
Lanham Act were in place before 1990, "[w]here there is need of a
statute of limitation in a suit based on the Federal Lanham Act,
courts will look to the relevant forum state statute which best
effectuates the federal policy at issue." 6 McCarthy on Trademarks
and Unfair Competition § 31:23 (2011); *see also Mary Kay, Inc. v.
Weber*, 601 F.Supp.2d 839, 859-860 (N.D. Tex. 2009) (Texas four-year
statute of limitations applies to measure laches defense). The law
of trademark infringement and unfair competition in Louisiana is
governed under the Unfair Trade Practices and Consumer Protection
Law, specifically La. Rev. Stat. Ann. § 51:222; *see also* La. Rev.
Stat. Ann. § 51:1405. Louisiana imposes a one-year prescriptive

period, commencing "from the time of the transaction or act which gave rise" to the private cause of action created under the Unfair Trade Practices and Consumer Protection Law.  § 51:1409(E).

In Louisiana, the "burden of proof generally rests on the party asserting prescription." *Carriere v. Jackson Hewitt Tax Serv. Inc.*, 750 F.Supp.2d 694, 702 (E.D. La 2010) (citing *Eastin v. Entergy Corp.*, 2003-C-1030 (La. 2/6/04); 865 So.2d 49, 54).  "However, if prescription is evident on the face of the pleadings [] . . . , the burden shifts to the plaintiff to show that the action has not prescribed." *Eastin v. Entergy Corp.*, 2003-C-1030 (La. 2/6/04); 865 So.2d 49, 54.

In the current proceeding, Plaintiff maintains that it first learned that Defendants allegedly infringed on its trademark and engaged in unfair competition by defectively repackaging its snowball flavoring concentrates in May 2010.  (Rec. Doc. No. 1, at ¶ 20-21).  Plaintiff, after issuing a cease and desist letter to Defendants, filed the current action with this Court on March 3, 2011.  Therefore, from the face of the pleadings, Plaintiff has satisfied its requirement to file suit within one year "from the time of the transaction or act which gave rise" to the private cause of action.  La. Rev. Stat. Ann. § 51:1409(E).  Defendants simply provide conclusory statements that Plaintiff's cause of action has prescribed without carrying their burden of proof to show that Plaintiff knew of Defendants' actions before May 2010.  Because

prescription is not evident from the face of the pleadings or any materials considered by the Court for the purposes of deciding this Motion to Dismiss Under Rule 12(b)(6), Plaintiff's well-pleaded facts state a claim for which it may be entitled to relief.

E.   *Federal Dilution of Trademark*

Section 43(c) of the Lanham Act provides a cause of action for trademark "dilution by tarnishment" and is reproduced in pertinent part below:

(c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, *at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce* that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (emphasis added).  A mark is famous for purposes of paragraph (1) "if it is recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A).  The Lanham Act § 43(c) allows the court to consider "all relevant factors" to determine if a mark has the requisite degree of recognition, including: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised

22

or publicized by the owner or third parties, (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark, (iii) the extent of actual recognition of the mark, and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. § 1125(c)(2)(A)(i)-(iv).

"Dilution by tarnishment" is defined, for purposes of paragraph (1) as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." § 1125(c)(2)(C).

Section 43(c) of the Lanham Act also provides a cause of action for "dilution by blurring." *See* 15 U.S.C. § 1125(c)(1). "[D]ilution by blurring is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." § 1125(c)(2)(B) (internal quotations omitted). The Lanham Act § 43(c) allows the court to consider all relevant factors to determine "whether a mark or trade name is likely to cause dilution by blurring," including the following six factors: (i) the degree of similarity between the mark or trade name and the famous mark, (ii) the degree of inherent or acquired distinctiveness of the famous mark, (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark, (iv) the degree of recognition of the famous mark, (v) whether the user of the mark or trade name intended

to create an association with the famous mark, and (vi) any actual association between the mark or trade name and the famous mark.  15 U.S.C. § 1125(c)(2)(B)(i)-(vi).

Finally, in an action brought under the Lanham Act § 43(c), the owner of a famous mark is entitled to additional remedies, other than injunctive relief, if "the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment *was first used in commerce by the person against whom the injunction is sought after October 6, 2006*." 15 U.S.C. § 1125(c)(5)(A) (emphasis added).

Accepting Plaintiff's well-pleaded facts as true, the Complaint contains sufficient factual matter to raise the claim of federal trademark dilution above the speculative level; the reasonable inference, based off the facts presented, is that Plaintiff's products and mark had been in commerce long enough to have become famous and possess distinction by the time that Defendants commenced use of Plaintiff's products in commerce.  Specifically, Plaintiff alleges that because of its exclusive use of the SNOWIZARD mark, "the mark has acquired a high degree of distinctiveness and secondary meaning and has become famous among distributors of snowball products, snowball vendors, and confectioners, who associate the mark with the high-quality products" manufactured and sold by Plaintiff.  (Rec. Doc. No. 1, at ¶ 12).  *See Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. 544, 570 (2007); *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *True v. Robles*, 571

24

F.3d 412, 417 (5th Cir. 2009). Further, based off Plaintiff's well-pleaded facts, Defendants' actions lead to the inference from the Complaint that dilution by tarnishment and blurring has possibly occurred because of the quality of the labels and the misspellings thereon. *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004); *Shreveport La. Hayride Co., L.L.C. v. Kent*, 2009 WL 1371712 (W.D. La. 2009); *Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*, 616 F.Supp.2d 622, 642-43 (N.D. Tex. 2009).

Defendants' arguments that injunctive relief is frivolous and that Plaintiff failed to establish in its Complaint that the SNOWIZARD mark is famous both fail. The language of the statute allows for injunctive relief "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." § 1125(c)(1). Also, Plaintiff has alleged facts that tend to show that the mark was famous within the meaning of the statute by the time Defendants first used the mark in commerce. Plaintiff has thus sufficiently pleaded a claim for which Plaintiff may obtain injunctive relief.

Additionally, Plaintiff may be entitled to "additional remedies" under 15 U.S.C. § 1125(c)(5)(A). Additional remedies are only available if "the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after

25

October 6, 2006." § 1125(c)(5)(A).  Section 1125(c) applies to both registered and unregistered marks.  Plaintiff's claim for additional remedies under § 1125(c)(5)(A) may apply here because while Plaintiff admits in its Complaint that Defendants first began using SnoWizard flavoring concentrates in 1991, Plaintiff also alleges that it presently has no means of ascertaining the full extent of Raggs's dilution of the SNOWIZARD mark.  (Rec. Doc. No. 1, at ¶ 27).  Plaintiff has therefore plausibly alleged that Defendants first began offering defectively repackaged bottles of snowball flavoring concentrates bearing the SNOWIZARD mark for resale after October 6, 2006.  For this reason, Plaintiff has stated a claim for which additional remedies may be available under federal trademark dilution.

F.  *Defamation*

Under Louisiana law, the *prima facie* case of defamation has four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.  *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97); 703 So.2d 552, 559.  Thus, the plaintiff in a defamation action "must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993).  If a plaintiff fails to establish even one of the above

26

elements of the *prima facie* case, the whole cause of action fails. *Costello v. Hardy*, 03-1146 p. 13 (La. 1/21/04) 864 So.2d 129, 139. Louisiana defines a defamatory statement as one that "tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule." *Mitchell v. Villien*, 08-1470, p. 6 (La. App. 4 Cir. 8/26/09); 19 So.3d 557, 562.  When the defamatory words "by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, [the words] are considered defamatory *per se*." *Brungardt v. Summit*, 08-0577, p. 8 (La. App. 4 Cir. 4-8-09); 7 So.3d 879, 885 (quoting *Costello*, 03-1146 at p. 13-14; 864 So.2d at 140). "If publication of words that are defamatory *per se* is proven, the elements of falsity, malice, fault, and injury are presumed, but they can be rebutted." *Id*. at pp. 8-9; 885.

The law of defamation in Texas is similar to that of Louisiana. In Texas, where Defendants reside, in order to establish a cause of action, a plaintiff must prove that: (1) the defendant published a statement of fact, (2) the statement was defamatory, (3) the statement was false, (4) the defendant acted negligently in publishing the false and defamatory statement, and (5) the plaintiff suffered damages as a result. *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 382 (Tex. App. 2005).  A statement is

27

defamatory *per se* if it "cause[s] injury to a person's office, business, profession, or calling. . . ." *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App. 2005).  If the statement is defamatory *per se*, damages are presumed and the plaintiff does not have to establish "independent proof of damage to the plaintiff's reputation or mental anguish. . . ." *Id*.

Without reaching the issue of which law will govern this claim, Plaintiff has adequately stated a valid claim for defamation under both Louisiana law and Texas law.  Plaintiff's Complaint alleges that Defendants made false statements to Defendants' snowball vendor customers that Defendants no longer carried Plaintiff's products because Plaintiff "was having problems supplying and delivering products timely."  (Rec. Doc. No. 1, at ¶ 41).  Plaintiff's Complaint further alleges that such defamatory statements were made with knowledge of their falsity and with reckless disregard for the truth.  *Id*.  Plaintiff alleges that such actions tended to and tend to harm Plaintiff's business reputation, to lower the public's estimation of Plaintiff, to deter others from associating or dealing with Plaintiff, and to expose Plaintiff to contempt and ridicule. *Id*.  Plaintiff has sufficiently alleged that such statements violate Louisiana law and the "state common law of defamation," which Plaintiff claims to incorporate Texas law.

Defendants' argument that Plaintiff did not establish a claim for defamation fails for three reasons.  First, the defense of truth

and the argument that Plaintiff has not established falsity both fail. Plaintiff's Complaint states that Defendant cancelled all orders of flavoring concentrate from Plaintiff after Plaintiff demanded that Defendant cease and desist selling any repackaged SnoWizard flavoring concentrates and destroy all counterfeit labels. (Rec. Doc. No. 1, at ¶ 23). Defendants claim their statements made to snowball vendor customers was truthful because Defendants cancelled the orders referenced above because of an alleged delay in shipment. (Rec. Doc. No. 11-1, at 11). Thus, at this stage in the proceedings, Plaintiff's well-pleaded facts have sufficiently alleged that the statements were false and were made with knowledge of their falsity.

Second, Defendants' argument that Plaintiff failed to adequately allege fault on the part of Defendants in making the statements fails. In its Complaint, Plaintiff clearly alleges that Defendants published the allegedly defamatory statements with reckless disregard for the truth, with knowledge of their falsity, and with malice. Therefore, accepting the Plaintiff's well-pleaded allegations as true, Plaintiff has sufficiently alleged that Defendants made the allegedly defamatory statements while possessing a culpable mental state of greater than negligence.

Third, despite Defendants' argument, the injury component is sufficiently established in Plaintiff's complaint. Plaintiff claims that its business reputation has been injured, along with the

public's estimation of Plaintiff, as a result of Defendants' statements. The *prima facie* cases for defamation in both Louisiana and Texas only require that a plaintiff allege injury or damages. In fact, based off the Complaint, Plaintiff has pleaded a case in which injury or damages may be presumed because the allegedly defamatory statements were of such nature to seemingly damage or cause injury to Plaintiff's reputation. *See Brungardt*, 08-0577, p. 8; 7 So.3d at 885; *Moore*, 166 S.W.3d at 384.

Plaintiff's Complaint asserts more than conclusory statements of fact regarding its claim of defamation and sufficiently establishes the requisite elements for an action in defamation. Therefore, Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state a plausible claim for defamation under both Louisiana law and Texas common law as required by *Iqbal*, 129 S.Ct. at 1949.

G.  *Improper Defendant*

Defendants assert that Defendant Ron Robinson no longer owns or manages Raggs and has not done either since he transferred all of his interest in Raggs Sno-Cone Supplies in 2005. Defendants thus claim that Robinson is not properly made a defendant in this action. However, Defendants provide no support for this assertion. Accordingly, at this time in the proceedings, we find dismissal of Defendant Ron Robinson inappropriate.

*H.   Conclusion*

Plaintiff's Complaint contains more than "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. In fact, Plaintiff's Complaint states a claim to relief for trademark infringement, unfair competition, dilution of trademark, and defamation.   These claims are plausible on their face.   *See Twombly*, 550 U.S. at 557.   Further, Plaintiff's Complaint "pleads factual content that allows the court to draw the reasonable inference that the [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.   Accordingly, Defendants' Motion to Dismiss is denied.

## II.  Motion for Sanctions Under Rule 11

Defendants seek sanctions against Plaintiff pursuant to Fed. R. Civ. P. 11.   Defendants' claims to sanctions are based off what Defendants claim to be a frivolous lawsuit brought by Plaintiff that contains groundless, bad-faith, and harassing claims.   (Rec. Doc. No. 13, at 1).

Plaintiff responds to Defendants' Memorandum in Support of Motion for Sanctions Under Rule 11 by stating that Defendants' Motion and Memorandum are devoid of merit their face and are presented for improper purposes.   (Rec. Doc. No. 15, at 1). Therefore, Plaintiff claims that it is entitled to an award of the reasonable attorney fees incurred for the motion.

Fed. R. Civ. P. 11(c)(1) allows the court to impose an

31

appropriate sanction on an attorney if the court determines that such attorney violated Rule 11(b).  Fed. R. Civ. P. 11(b) imposes four duties on an attorney in regards to pleadings.  Under Rule 11(b), "[b]y presenting to the court a pleading . . ." an attorney ". . . certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "the claims . . . and other legal contentions are warranted by existing law . . ."; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"; and (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(1)-(5).

No indication in the record, or extrapolation of the facts therefrom, exists to show that Plaintiff filed a frivolous lawsuit with bad-faith or harassing claims.  Contrarily, Plaintiff's lawsuit is anything but frivolous or baseless.  Where, as here, the Court has examined all elements of a plaintiff's Complaint and determines that the plaintiff has alleged sufficient facts to survive a motion to dismiss under Rule 12(b)(6), a defendant's motion for sanctions

under Rule 11 must be denied. *See, e.g.*, *Health Net, Inc. v. Wooley*, 534 F.3d 487, 497 (5th Cir. 2008).

Additionally, although Plaintiff correctly asserts that an award for sanctions to the prevailing party in a Rule 11 motion is permitted under Fed. R. Civ. P. 11(c)(2), the Court does not find that such sanctions are warranted at this time.

New Orleans, Louisiana, this 8th day of July, 2011.

_____
United States District Judge