**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SNOWIZARD, INC.**                          **CIVIL ACTION**

**VERSUS**                                          **NO. 11-515**

**RON ROBINSON, et al.**                    **SECTION: "G"(1)**

## ORDER AND REASONS

Before the Court is Plaintiff, Defendant-in-counterclaim, SnoWizard, Inc.'s ("SnoWizard")

Motion for Summary Judgment regarding Defendants Raggs Supply, LP and its general partner Doty

Management, LLC's (collectively, "Raggs") counterclaims.[1] In SnoWizard's motion, it requests that

this Court dismiss Raggs' remaining counterclaims against SnoWizard which have its "'Count 1,

Breach of Contract,' 'Count 2, Tortious Interference with Business and Contracts,'[2] and 'Count 3,

Unfair Business Practices'" claims.[3] Specifically, SnoWizard avers that Raggs cannot prove the

existence of any "obligation" or "valid contract" which SnoWizard allegedly breached as necessary

to prevail on its alleged Louisiana or Texas breach of contract claim; that SnoWizard engaged in any

improper, malicious, tortious or illegal influencing of others as necessary to prevail on its alleged

Louisiana or Texas tortious interference with business and contract claim or any of the essential

elements of its alleged claims for unfair business practices under § 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. And Com. Code

§ 17.01 *et. seq.*, or Louisiana Unfair Trade Practice ("LUPTA"), La. R.S. 51:1401 *et seq*. After

SnoWizard filed the present Motion for Summary Judgment on Remaining Counterclaims raised by

---

[1] Rec. Doc. 127.

[2] Rec. Doc. 127-1.

[3] *Id.*

Raggs, Raggs stipulated that for the breach of contract and unfair business practices claims, originally brought under both Louisiana and Texas law, Raggs now only pursues these counterclaims under Louisiana law; further, Raggs abandons any tortious interference cause of action for business or contracts under Louisiana law and now only pursues relief for this claim under Texas law.[4]  Therefore, this Court addresses only Raggs' breach of contract claim under Louisiana law, the claims for "tortious interference with prospective business relations and tortious interference with contract"[5] under Texas law, and the claims for unfair business practices under Section 43(a) of the federal Lanham Act and LUTPA.

Having considered the motion, the response, the reply, the record, and the applicable law, for the following reasons, the Court will grant in part and deny in part the motion. Specifically, this Court will grant summary judgment in SnoWizard's favor and dismiss Raggs' counterclaim for unfair competition under Section 43(a) of the Lanham Act. However, this Court will deny SnoWizard's motions for  summary judgment on the breach of contract, tortious interference with prospective business relations, tortious interference with contract, and LUTPA counterclaims.

---

[4]  *See* Rec. Doc. 158. In Raggs' stipulation, it states that it pursues its breach of contract and unfair business practices counterclaims under Louisiana law, because it believes its contact with SnoWizard and the alleged unfair business practices originated in Louisiana.  For Raggs' counterclaim for "tortious interference" it stipulates that Texas law should apply because the customer Raggs alleges was affected resides in Texas.

[5]  Texas law recognizes "tortious interference with prospective business relations" and "tortious interference with contract" but this Court finds no support for a distinct cause of action for "tortious interference with business and contracts." However, in an abundance of caution, this Court will address Raggs' counterclaims under tortious interference with prospective business relations and tortious interference with contact.

# I. Background

## A. Factual Background

SnoWizard is a company that began to package and sell snowball[6] flavoring concentrates to vendors and other distributors dating back to at least the 1980's.[7] On August 18, 2009, SnoWizard obtained a trademark for the term "SNOWIZARD" in connection with "food flavorings" from the United States Patent and Trademark Office ("USPTO").[8] From 1991 until June 2010, Raggs purchased flavoring from SnoWizard at discounted wholesale prices. There was never a written contract or licensing agreement between the parties.[9]

In May 2010, Walter Cole, a snowball vendor who had previously purchased SnoWizard flavorings from Raggs, complained to SnoWizard that several products that he purchased were mislabeled and contained a different flavor than what the label advertised.[10] SnoWizard alleges that this was the first time it learned that Raggs was repackaging its goods and applying "counterfeit" SnoWizard labels without any disclaimer.[11] In late May or early June 2010, SnoWizard sent an email to Raggs requesting that it cease selling SnoWizard products that had been repackaged.[12] The next day Raggs notified SnoWizard that it had removed the repackaged products from its website.[13]

---

[6] "Snowballs" are flavored ice shaving treats similar to those often referred to as "snow cones" elsewhere throughout the United States.

[7] Rec. Doc. 127-1 at p. 2.

[8] *Id.*

[9] *Id.* at p. 3.

[10] *Id.*

[11] *Id.*

[12] *Id.* at p. 4.

[13] *Id.* at p. 5.

Subsequently, but still in late May and early June, Raggs placed new orders with SnoWizard, to which SnoWizard initially did not respond.[14] Raggs alleges that SnoWizard purposefully ignored its phone calls inquiring about the fulfillment of these orders.[15] Raggs further claims that while SnoWizard was "delaying" the orders, an existing customer of Raggs, Manuel Hernandez, attempted to buy 94 gallons of SnoWizard flavoring product from Raggs. Raggs alleges that due to SnoWizard's delay, Raggs was unable to fulfill "contracts of sale between [itself] and customers."[16] Specifically, Raggs alleges that its contract with Hernandez could not be fulfilled and therefore Hernandez contacted SnoWizard directly to purchase the 94 gallons of flavoring concentrate. According to Raggs, and undisputed by SnoWizard, not only did SnoWizard sell the product directly to Hernandez, but it also gave Hernandez a 7.5% discount from the price for which SnoWizard would normally have sold the product.[17] It was not until the day after this sale, on June 8, 2010, that SnoWizard responded to Raggs' several inquiries relating to its orders and explained that Raggs' orders had been delayed due to its previous repackaging and re-labeling of SnoWizard products. Moreover, SnoWizard refused to fulfill the orders unless Raggs agreed to specific terms which Raggs refused to do.  Raggs immediately canceled all remaining orders with SnoWizard and liquidated any remaining SnoWizard product.[18]

### B. Procedural Background

---

[14]  Rec. Doc. 128 at p. 1.

[15]  *Id.*

[16]  Rec. Doc. 25 at p. 7

[17]  Rec. Doc. 128 at pp. 1-2.

[18]  *Id.* at 2.

SnoWizard filed a complaint in this matter on March 3, 2011.[19] The suit was originally assigned to Judge Ivan L.R. Lemelle but later was transferred to Section "G." In its complaint, SnoWizard seeks damages for alleged trademark infringement, unfair competition, and defamation.[20] Raggs filed an answer on July 22, 2011, wherein it denies liability for the claims against it and asserts counterclaims of its own; specifically, Raggs alleges that SnoWizard is liable for breach of contract under Louisiana law, "tortious interference with business and contracts" under Texas law, and unfair business practices under Section 43(a) of the federal Lanham Act and LUTPA.[21] On April 13, 2012, SnoWizard filed the pending motion seeking summary judgment in its favor regarding Raggs' counterclaims.[22] Raggs' filed an opposition on April 16, 2012.[23] After receiving leave of court, SnoWizard filed a reply on April 23, 2012.[24]

## II. Standard Applied to a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[25] When assessing whether a dispute as to any

---

[19] Rec. Doc. 1.

[20] *Id.*

[21] Rec. Doc. 25. As previously noted, Raggs no longer pursues a claim for breach of contract under Texas law, "tortious interference with business and contracts" under Louisiana law, or a claim for unfair trade practices under the common law of Texas. *See* Rec. Doc. 158.

[22] Rec. Doc. 127.

[23] Rec. Doc. 128.

[24] Rec. Doc. 140.

[25] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

material fact exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[26] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[27] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[28] Because factual disputes may not be resolved on summary judgment, a plaintiff need not offer all of its evidence, but rather only enough to show that a jury *might* return a verdict in its favor.[29] If the nonmovant would bear the burden of proof at trial on a claim, the movant may simply point to the absence of evidence, which then returns the burden on the motion for summary judgment to the nonmovant.[30] Then, the nonmovant must point to competent evidence that there is an issue of material fact so as to warrant trial.[31] To defeat summary judgment, the nonmovant must direct the court's attention to specific evidence in the record to establish an issue of material fact as to each claim on which it will bear the burden of proof at trial.[32]

## III. Law and Analysis

---

[26] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[27] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation omitted).

[28] *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[29] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

[30] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam).

[31] *Id.*

[32] *Rizzo v. Children's World Learning Ctrs.*, 84 F.3d 758, 762 (5th Cir. 1996).

### A. Breach of Contract

In its counterclaim for breach of contract, Raggs claims "SnoWizard's refusal to ship orders, and the demands made on and after 8 June 2010, including a unilateral imposition of new terms, to the disadvantage of Raggs, in an already existing 19-year distribution relationship, were a breach of contract under Texas and Louisiana law."[33] In its motion for summary judgment on the issue of breach of contract, SnoWizard asserts that "Raggs has not and cannot identify, much less prove the existence of, any contractual duty which SnoWizard owed to Raggs and breached under either Louisiana or Texas law."[34]

In order to recover for breach of contract under Louisiana law,[35] the plaintiff must prove: (1) the obligor's undertaking of an obligation to perform; (2) that the obligor failed to perform the obligation (i.e. breach); and (3) that the breach resulted in damages to the obligee.[36] An obligation, or contract, is defined in the Louisiana Civil Code as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another."[37] "A contract is formed by consent of the parties established through offer and acceptance."[38] In order to create a binding obligation, both parties must agree to the substantial elements of the contract.[39] Consent to a sales

---

[33] Rec. Doc. 25, Counterclaim, ¶ 27.

[34] Rec. Doc. 127 at p. 8.

[35] Defendants stipulate that only Louisiana law applies to this claim.  Rec. Doc. 158.

[36] *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108-09.

[37] La. C.C. art. 1756.

[38] La. C.C. art. 1927.

[39]  La. C.C. arts. 1779 and 1798.

contract must include agreement on the thing and the price.[40] If the parties do not agree on all the terms, then there is no contract.[41] Unless specific statutes state otherwise, Louisiana law allows offer and acceptance to be made in any manner that is "clearly indicative of consent," and there need not be conformity between the manner in which the offer is made and the manner in which it is accepted.[42] Louisiana cases have held that consent may be implied, even through a party's silence, from the circumstances.[43]  If there is a genuine dispute, it is left to the fact-finder to determine whether there has been a "meeting of the minds" between the parties so as to constitute mutual consent.[44] Moreover, "[t]he existence or nonexistence of a contract is a question of fact and, accordingly, the determination of the existence of a contract is a finding of fact."[45]

Here, SnoWizard denies liability for breach of contract.[46] SnoWizard cites the Louisiana Civil Code, which requires "a party who demands performance of an obligation [to] prove the existence of the obligation."[47] SnoWizard asserts that Raggs cannot prove an underlying obligation or contract, and, therefore, that Raggs' counterclaim for breach of contract must fail. Specifically, SnoWizard contends that "Raggs has not and cannot prove either the existence of an 'obligation' under Louisiana law or the existence of a 'valid contract' under Texas law" and that "the most Raggs

---

[40]  La. C.C. art. 2439.

[41]  *Phillips v. Berner*, 2000-0103 (La. App. 4 Cir. 5/16/01); 789 So.2d 41, 45.

[42]  *See* La. C.C. art. 1927.

[43]  *See, e.g., Bailey v. R.E. Heidt Const. Co.*, 205 So.2d 503, 506 (La. App. 3 Cir. 1967).

[44]  *Id.*

[45]  *Sam Staub Enters., Inc. v. Chapital*, 2011-1050 (La. App. 4 Cir. 3/14/12); 88 So.3d 690, 694.

[46]  Rec. Doc. 127-1 at p. 8.

[47]  *Id.* (citing La. C.C. art. 1831).

can do is show that it purchased snowball flavoring concentrates, snowball machines, and related products from SnoWizard at discounted wholesale prices during the nineteen year period from 1991 to 2010, as evidenced by wholesale price lists, a letter regarding bulk discount sale summaries, and invoices."[48]  SnoWizard goes on to argue, "of course none of that obligated SnoWizard to perform any act in accordance with any contractual term or terms which SnoWizard failed to perform at any time.  Otherwise, SnoWizard simply had no business relationship or contractual agreement with Raggs wholesaler."[49]  Thus, according to SnoWizard, no underlying contract or obligation existed, as is necessary to support an action for breach of contract in Louisiana.[50]

In opposition, Raggs claims, that SnoWizard and Raggs had a dealer-distributor-re-seller relationship that extended over nineteen years; and that this "19 year course of conduct is a contractual relationship."[51]  According to Raggs, "a 19- year course of conduct creates a contractual relationship under the laws of any state and any nation that anyone could come up with under Louisiana law, Texas law, the Uniform Commercial Code, English common law, Chinese law, European law, ancient Roman law - it is a relationship defined by a 19-year course of conduct."[52]

In the alternative, Raggs argues "at the very least - [each weekly order, shipment, and payment was] an individual contract of wholesale for the purpose of re-sale."[53]  Raggs further contends that there is no dispute that orders were placed in late May and early June 2010 and that

---

[48]  *Id.* at pp. 8-9.

[49]  *Id.* at p. 9.

[50]  *Id.*

[51]  Rec. Doc. 128 at p. 3.

[52]  Rec. Doc. 128 at p. 3.

[53]  *Id.*

SnoWizard deliberately withheld those orders, thus constituting, at a minimum, a breach of those contracts.[54]

In reply, SnoWizard argues that proving that Raggs placed orders is insufficient to succeed on a breach of contract claim because under Louisiana law there must also be evidence of "consent" or "agreement" for a contract to exist.[55] SnoWizard claims that it cannot be held liable in breach of contract on the final orders because it never evidenced acceptance of the orders placed in late May and early June.[56]

The parties do not dispute that orders were placed by Raggs and fulfilled by SnoWizard over a nineteen year period.  Although SnoWizard concedes that the parties had a 19 year history of one party placing orders and the other fulfilling them, SnoWizard denies that it was bound by contract to fulfill the orders placed with it by Raggs in late May early June, 2010 because it never agreed to fill those orders.  In contrast, Raggs asserts that through the parties 19 year course of conduct, a contract was implied upon order.  Nevertheless, Raggs concedes that after it placed its orders with SnoWizard in late May and early June 2010, SnoWizard refused to ship its products unless Raggs agreed to specific terms, which Raggs then declined to do.  In deciding the pending motion for summary judgment regarding Raggs' counterclaim for breach of contract, this Court must determine whether there is a triable issue of fact as to the existence of a contract, which in this case, is reserved for a jury, as fact finder, to decide.

---

[54] *Id.* at p. 5.

[55] *Id.* (citing La. C.C. art. 2439).

[56] *Id.*

10

In *Herndon & Associates, Inc. v. Gettys*,[57] the Louisiana Court of Appeal for the Fifth Circuit held that the trial court erred in granting summary judgment to dismiss the plaintiff's breach of contract claim based on the trial court's finding that no contract existed. In that case, Herndon, the plaintiff, had an agency contract with Travelers for the placement of automobile, commercial, and homeowners insurance policies. It was undisputed that Travelers permissibly canceled at least a portion of the agency contract between it and Herndon, and subsequently Herndon entered into a separate contract with Gettys, an authorized agent of Travelers, to bring new business to Gettys who in turn would submit the policies to Travelers. Herndon claimed that Travelers wrongfully withheld commissions from its dealings with Gettys in breach of Herndon and Traveler's agency contract. Travelers claimed that it had previously canceled the entire contract, and therefore there could be no action for breach of contract.

In reviewing the trial court's grant of summary judgment dismissing the breach of contract claim, the court was explicit in stating that the determination of the existence of a contract is "a finding of fact" under Louisiana law. While it was undisputed that a portion of the agency contract between Travelers and Herndon was canceled, the court could still not find as a matter of law that no contract existed between the parties because there was nothing in the record to evidence that the "entire contract between Herndon and Travelers had been terminated."[58] Instead, the court found questions of material fact relative to the existence of the contract precluded summary judgment.

Like the questionable existence of an agency agreement in *Herndon*, the existence or nonexistence of a contract is a material issue of fact  in deciding the breach of contract claim here

---

[57]  95-206 (La. App. 5 Cir. 7/25/95); 659 So.2d 842.

[58]  *Id.* at 845.

and one which is genuinely in dispute.  Accordingly, the Court finds that because reasonable minds could dispute the existence of a contract here, summary judgment against Raggs' on its counterclaim for breach of contract must be denied.

### B. Tortious Interference with Business and Contracts Claims

In Count 2 of Raggs' counterclaim, Raggs asserts a claim for "Tortious Interference with Business and Contracts" under Texas law, based on one set of facts.  However, Texas only provides recovery for a claim of tortious interference with prospective business relations and separately, it provides recovery for tortious interference with contract.  Accordingly, the Court will examine the facts under each theory of tort liability.

Raggs alleges that "SnoWizard's purposeful refusal to fulfill and ship orders, including orders containing items specially ordered in contracts of sale between Raggs and customers of Raggs, with the contracted-for timely delivery premised on the explicitly promised and customary prompt delivery by SnoWizard of such orders, is tortious interference by SnoWizard with the special-order contracts, the Raggs business, and the business relationship between Raggs and its customers, under Texas law."[59]  In its motion for summary judgment, SnoWizard asserts that Raggs has not and cannot establish that SnoWizard breached any legal duty in violation of the Texas tort law of tortious interference with business and contracts.[60]

### 1. Tortious Interference with Prospective Business Relations

---

[59] Rec. Doc. 25 at p. 7.

[60] Rec. Doc. 127-1 at p. 9.

To establish a claim of tortious interference with prospective business relations, a claimant must show a reasonable probability that parties would have entered into a contractual relationship but that the tortfeasor acted maliciously and intentionally to prevent the relationship from occurring, with the intent to harm the claimant.[61] The claimant need not show actual malice or ill will, but instead may succeed by demonstrating that the interfering party acted "unlawfully, intentionally and knowingly, without just cause or excuse."[62] In a case specifically addressing several claims of tortious interference under Texas law, the Fifth Circuit has noted that "when state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility."[63] Therefore, dismissal on summary judgment of a claim for tortious interference with prospective business relations on where intent is in dispute is only appropriate if the nonmoving party's claims rest upon "'conclusory allegations, improbable inferences, and unsupported speculation.'"[64]

In addition to having the requisite intent, the defendant's conduct also must be independently tortious or wrongful to establish a claim for tortious interference with prospective business relations under Texas law.[65] For the conduct to be "independently tortious," the plaintiff must prove that the conduct could be actionable under a recognized tort.[66] For example, a defendant's fraudulent

---

[61] *Levine v. First Nat'l Bank of Eagle Pass*, 706 S.W.2d 749, 751 (Tex. App. 1986) (citing *Verkin v. Malroy*, 699 F.2d 729 (5th Cir. 1983)).

[62] *Barker v. Brown*, 772 S.W.2d 507, 511 (Tex. App. 1989).

[63] *Int'l Shortstop, Inc.*, 939 F.2d at 1265,

[64] *Id.*

[65] *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

[66] *Id.*

statements about the plaintiff that are intended to deceive a third party or a threat of physical harm to the plaintiff would constitute tortious interference because of the underlying torts of fraud and assault, respectively.[67] However, conduct that is merely "sharp" or unfair is not actionable and, therefore, does not constitute tortious interference with prospective business relations.[68] Harm that results "only from lawful competition" is not compensable under a claim for tortious interference with prospective business relations.[69]

In support of its motion for summary judgment, SnoWizard cites authority from the Texas Supreme Court that outlines the critical elements of tortious interference with prospective business relations, which specifically requires a defendant's actions to be "independently tortious or wrongful."[70] SnoWizard argues that if a defendant does not intend to deceive a third party with statements or actions directed at the plaintiff, then there is no cause of action for tortious interference.[71] Furthermore, SnoWizard directs this Court to the exceedingly high threshold required to implicate this cause of action under Texas law.[72] SnoWizard argues that Raggs has failed to allege that SnoWizard "tortiously or illegally defrauded, assaulted, or extorted anyone or otherwise tortiously or illegally interfered with [Raggs'] prospective business relations as required under Texas law."[73]

---

[67]   *Id.*

[68]   *Id.*

[69]   *Id.* at 727.

[70]   Rec. Doc. 127-1 at p. 10.

[71]   *Id.*

[72]   *Id.* (citing *Wal-Mart Stores, Inc.*, 52 S.W.3d 711 at 726).

[73]   *Id.* at p. 11 (citations omitted).

In response, Raggs asserts that because Hernandez now buys directly from SnoWizard and not Raggs, SnoWizard's actions constituted "tortious interference with business and contracts."[74] Raggs cites to the deposition of SnoWizard president, Ronald Sciortino, where Sciortino admits that he did not respond to Raggs' inquiries until June 8, 2010.[75] It is uncontested that Hernandez contacted SnoWizard directly to fill the order, when Raggs was unable to do so while SnoWizard refused to respond to its inquiries regarding why its orders were not being filled, thus depriving Raggs of Hernandez's business.[76] Raggs further argues that Hernandez was given a 7.5% discount in order to entice him to transact business with SnoWizard instead of Raggs.[77] Raggs also notes that it was only after SnoWizard completed the transaction with Hernandez that it communicated to Raggs that its orders would continue to be delayed unless Raggs agreed to new terms. Raggs claims that this demonstrates that SnoWizard deliberately withheld the orders and avoided communication with Raggs so that Hernandez would seek another distributor, in this case SnoWizard, thus improperly influencing another not to transact business with Raggs.[78]

In reply, SnoWizard argues that Raggs' claims for tortious interference rely solely on the "unsubstantiated assertions" that SnoWizard unfairly influenced one of Raggs' customers not to conduct business with Raggs.[79] Moreover, SnoWizard claims that, even if Raggs' allegations are assumed true, the alleged actions do not constitute the elements of "tortious interference with

---

[74]   Rec. Doc. 128 at p. 5.

[75]   *Id.*

[76]   *Id.* at p. 6.

[77]   *Id.*

[78]   *Id.* at p. 7.

[79]   Rec. Doc. 140 at p. 5.

business and contracts" because they do not establish an improper or illegal influencing a third party, which SnoWizard claims is necessary under Texas law.[80]

In sum, Raggs alleges that SnoWizard intentionally kept Raggs in the dark about the status of its orders until after it began a direct business relationship with Hernandez and as a result caused the termination of the business relationship between Raggs and Hernandez.[81] A claim for tortious interference with prospective business relations also requires willful and intentional behavior on the part of the defendant. Here, the parties dispute SnoWizard's motives in delaying Raggs' orders and in waiting until after its sale with Hernandez to notify Raggs of the reasons for the delay.

The Court notes that a party asserting that a fact is "genuinely disputed" must support the assertion by "citing to particular parts of materials in the record."[82] Raggs points to the Sciortino deposition of March 27, 2010, where Sciortino admits that he first responded to Raggs' inquiries regarding the unfulfilled orders on June 8, 2010, the day after SnoWizard sold flavor concentrates directly to Hernandez.[83] Thus, although Sciortino stated that he did not have time to respond earlier and that his delay was not motivated by a malicious intent to harm Raggs, his testimony also makes clear that SnoWizard only informed Raggs that it would not ship its orders after SnoWizard secured Hernandez's business. The cause of SnoWizard's delay, which goes to intent, is a necessary element regarding the counterclaim for tortious interference with  prospective business relations, and therefore it is a material factual question that requires weighing the credibility of the evidence and

---

[80]  *Id.* at pp. 5-6.

[81]  Rec. Doc. 128 at pp. 5-6.

[82]  Fed. R. Civ. P. 56(c)(1).

[83]  Rec. Doc. 128 at p. 5.

accordingly, one that should be submitted to the jury. In addition, if Raggs' asserted facts are found to be true by a jury, SnoWizard's actions may be independently tortious, further satisfying the prerequisites for this counterclaim.[84]

To defeat summary judgment, Raggs need only point this Court to facts that could lead a rational trier of fact to rule in its favor.[85] Moreover, as noted previously, summary judgment is rarely appropriate for claims of tortious interference under Texas law, because the determination of the defendant's intent is a deeply factual inquiry.[86] Raggs asserts that it had a previous business relationship with Hernandez and it would have engaged in business with him in the future had Raggs been able to obtain the necessary product from SnoWizard. Raggs also has alleged malicious intent on the part of SnoWizard and in support has pointed to specific parts of the record to demonstrate a plausible issue of material fact concerning SnoWizard's failure to respond timely to Raggs. Therefore, Raggs has pled a sufficient set of facts that, if accepted as true, could support a claim of tortious interference with prospective business relations. Therefore, Raggs' counterclaim for tortious interference cannot be dismissed on summary judgment.

### 2. Tortious Interference with Contract

To prevail on a cause of action for tortious interference with contract under Texas law, a party must show (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused

---

[84] For instance, this behavior may implicate LUTPA. *See infra* Part III.C.2.

[85] *Int'l Shortstop, Inc.*, 939 F.2d at 1264.

[86] *Id.*

damage; and (4) that actual damage or loss occurred.[87] The defendant then carries the burden to show "some justification or privilege for depriving another of benefits which the agreement entitled him."[88]

Raggs' pleadings do not address separately tortious interference with contact  and therefore its alleged basis for this claim is very similar to that of its claim for tortious interference with prospective business relations. As such, in regard to this claim, the Court will consider Raggs' allegations that best address the elements of tortious interference with contract. Raggs claims that SnoWizard's behavior prevented the completion of an already existing contract between itself and Hernandez.[89] Specifically, Raggs alleges that Hernandez was waiting on a substantial order of flavoring concentrates from Raggs, but due to SnoWizard's delay in shipment, Hernandez instead bought directly from SnoWizard.[90]

In its memorandum in support of its motion for summary judgment, SnoWizard does not differentiate between the two possible claims of tortious interference, but rather asserts that the entire counterclaim should be dismissed because Raggs cannot prove that SnoWizard maliciously interfered with Raggs' customers.[91] This same argument is echoed again in SnoWizard's reply.[92]

In its pleadings, Raggs identifies a specific contract in existence between itself and Hernandez that was subject to interference. Raggs also alleges SnoWizard willfully and intentionally

---

[87] *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)

[88] *Wal-Mart Stores, Inc.*, 52 S.W.3d at 726.

[89] Rec. Doc. 25 at p. 7.

[90] Rec. Doc. 128 at pp. 6-9.

[91] Rec. Doc. 127-1 at p. 11.

[92] Rec. Doc. 140 at pp. 5-6.

interfered with the contact by delaying shipment of Raggs orders and not responding to Raggs inquiries. Raggs claims that because it could not get the flavoring concentrate, Hernandez sought another source, here SnoWizard, thus depriving Raggs of Hernandez's business on that specific contract. Finally, Raggs outlines the revenue it lost from its failure to complete this alleged contract with Hernandez. While SnoWizard denies that Raggs can prove the requisite intent necessary to prevail on a claim of tortious interference with contract, as was the case with the claim for tortious interference with prospective business relations, the determination of intent makes summary judgment inappropriate for this claim.[93] Therefore, SnoWizard's motion for summary judgment on this claim must also be denied.

## C. Unfair Business Practices

Raggs alleges in Count 3 of its counterclaim, that "Snowizard's counduct as alleged above regarding the events of 2010 is an unfair business practice under the federal Lanham Act § 43(a), ... unfair competition and business practices under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, causing damages and ascertainable injury to Counter-Plaintiff Raggs."[94]

SnoWizard contends it is entitled to summary judgment on Raggs' claims pursuant to section 43(a) of the Lanham Act, because Raggs neither alleges nor produces any evidence that SnoWizard has used in commerce any word, term, name, symbol, or devise, or any combination thereof or any false designation of origin, failure or misleading description of fact, or false or misleading representation of fact as required by § 43(a)(1) of the Lanham Act.  Nor does Raggs, according to

---

[93] *See Int'l Shortstop, Inc.*, 939 F.2d at 1264.

[94] Rec. Doc. 25 at p. 7.

SnoWizard, allege or produce any evidence of any confusion, mistake, or deception as to the affiliation, connection, or association of SnoWizard with Raggs or any other persons, or as to the origin, sponsorship, or approval of SnoWizard's goods, services, or commercial activities by Raggs or any other person as required by § 43(a)(1)(A) of the Lanham Act. SnoWizard goes on to state, "nor does Raggs allege or produce any evidence that SnoWizard misrepresented the nature, characteristics, qualities, or geographic origin of SnoWizard's or any other person's goods, services, or commercial activities 'in commercial advertising or promotion' as required by § 43(a)(1)(B) of the Lanham Act."[95] In other words, according to SnoWizard, Raggs has not and cannot establish any of the essential elements of its counterclaim for alleged unfair business practice under Lanham Act § 43(a), mandating its dismissal as a matter of law.[96]

### 1. Section 43(a) of the Lanham Act

Pursuant to Section 43(a) of the Lanham Act, a party seeking recourse under this provision must prove that the defendant used a term, name, or symbol in a manner that is likely to cause confusion.[97] Courts will grant summary judgment dismissing a claim under the Lanham Act if the claim is implausible and "'the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct.'"[98] The Fifth Circuit outlined the two main types of injuries that the

---

[95] Rec. Doc. 127-1 at p. 13.

[96] *Id.* (citing *Celotex*, 477 U.S. at 233-23 and *SnoWizard, Inc. v. Robinson*, 2011 WL 5024350, at *3 (E.D. La. Oct. 19, 2011) (dismissing Raggs counterclaim under Lanham Act § 43(a) where "Raggs makes no allegations that the representation was likely to cause confusion or mistake as to a person's affiliation with the product, or that SnoWizard made any misrepresentations in commercial advertising or promotion").

[97] 15 U.S.C. § 1125.

[98] *Harold H. Higgins Realty, Inc., P.E. v. FNC, Inc.*, 634 F.3d 787, 795-96 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)).

Lanham Act intended to address: (1) a party asserting a cause of action has commercial interests that have been harmed by false advertising; or (2) the alleged tortfeasor wrongfully diverted to itself the good will and reputation that the claimant had created for its business.[99]

Here, SnoWizard claims that Raggs does not allege any activity by SnoWizard that would support a cause of action for confusion resulting from SnoWizard's use of a term, name, symbol or device in commerce.[100] In its opposition to SnoWizard's motion for summary judgment, Raggs fails to address the issue at all.[101] In Raggs' Answer, wherein it initially raised all of its counterclaims, Raggs merely states, without further explanation, that "SnoWizard's conduct as alleged above regarding the events of 2010 is an unfair business practice under the federal Lanham Act [Section] 43(a)."[102] Raggs has not identified any specific actions by SnoWizard that were allegedly in contravention of the Lanham Act.[103]

As explained above, Section 43(a) provides a cause of action for recovery when a party uses a term, name, or symbol in a manner that is likely to cause confusion. Here, Raggs' allegations do not claim any confusion on the part of consumers, nor can Raggs' claims plausibly be said to fit within the two main categories of injury that the Lanham Act was meant to address; there have been no allegations of false advertising, nor is there a claim that SnoWizard misappropriated Raggs' good will or reputation. At trial, Raggs would be required to carry the burden on this claim. As such, SnoWizard, as movant in this motion for summary judgment, has pointed to the absence of evidence

---

[99] *Id.* at 797-98.

[100] *Id.*

[101] *See* Rec. Doc. 128.

[102] *See* Rec. Doc. 25 at p. 7.

[103] *See id.*

regarding this counterclaim. In so doing, the burden shifts to Raggs, who then must point to competent and specific evidence to demonstrate that there is a material fact to warrant trial and defeat summary judgment.[104] Raggs' silence on this claim fails to satisfy that burden. Therefore, this counterclaim is appropriately dismissed on summary judgment.

### 2. Louisiana Unfair Trade Practices Act ("LUTPA")

To establish a violation under LUTPA, a party must demonstrate fraud, misrepresentation, or unethical conduct,[105] and the determination of what activity constitutes unfair competition is decided on a case-by-case basis.[106] "Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned by LUTPA."[107] Summary judgment is not appropriate where there is sufficient evidence to raise a factual question of whether the defendant violated LUTPA.[108]

Here, Raggs asserts a cause of action under LUTPA for the same actions by SnoWizard upon which Raggs has based its other counterclaims: Raggs accuses SnoWizard of failing to timely deliver or notify them that their orders would not be honored. As a result, Raggs claims that it lost Hernandez as a customer, as well as the profits that it could have realized had it been able to deliver

---

[104]   *See Lindsey*, 16 F.3d at 618; *see also Rizzo*, 84 F.3d at 762.

[105]   *Cheramie Serv., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10); 35 So.3d 1053, 1059-60.

[106]   *Chem. Distirb, Inc. v. Exxon* Corp., 1 F.3d 1478, 1485 (5th Cir. 1993); *see also Dufau*, 465 So.2d at 757.

[107]   *Cheramie*, 35 So.2d at 1060.

[108]   *Chem. Distrib.*, 1 F.3d at 1486; *see also Jefferson v. Chevron USA, Inc.*, 97-2436 (La. App. 4 Cir. 5/20/98); 713 So.2d 785, 792.

SnoWizard's product.[109] Raggs further alleges that these actions were intentional and deliberately meant to harm and deprive Raggs of business.[110]

In response, SnoWizard cites *Turner v. Purina Mills, Inc.*, where the Fifth Circuit reversed the lower court's denial at trial of the defendant's motion regarding a Rule 50(a) Judgment as a Matter of Law.[111] The court reasoned that the plaintiff did not have a claim under LUTPA because the defendant acted squarely within the scope of the parties' contract and "those acts [were] not unethical, unscrupulous, or substantially injurious."[112] SnoWizard also directs this Court to language in *Purina* where the court states that LUTPA does not provide an alternative remedy for a simple breach of contract, but only applies to "egregious behavior."[113] In addition, SnoWizard cites to several Louisiana cases that construe LUTPA's cause of action narrowly, allowing sharp business practices.[114] SnoWizard denies that its behavior could be held to fall within these standards.[115]

Although *Purina* is informative, this case is distinguishable. In *Purina*, the defendant had a non-exclusive agreement with the plaintiff to sell the defendant's dog food.[116] When the plaintiff's sales declined, the defendant asked the plaintiff to participate in sales calls to the plaintiff's

---

[109] Rec. Doc. 128 at p. 8.

[110] *Id.* at p. 7.

[111] 989 F.2d 1419 (5th Cir. 1993).

[112] *Id.* at 1424.

[113] Rec. Doc. 127-1 at p. 15.

[114] *Id.* at pp. 15-16 (citing *Dufau*, 465 So.2d at 758 and *Cheramie*, 35 So.23d at 1059-60).

[115] *Id.* at p. 15

[116] 989 F.2d at 1420.

customers, but the plaintiff declined.[117] Eventually, the defendant terminated its relationship with the plaintiff as was permitted under the terms of their agreement and began to sell to the plaintiff's former customers through a new distributor.[118] The Fifth Circuit held, as a matter of law, that the defendant's actions did not violate LUTPA because they were merely sound business practices.[119] Further, the Fifth Circuit explained that because the defendant had previously warned the plaintiff that it would terminate their relationship if sales did not improve, there was no "fraud, misrepresentation, or ethical breach in the cancellation of the contract."[120]

Unlike the plaintiff in *Purina*, Raggs alleges unethical conduct and misrepresentation beyond merely terminating the business relationship. Raggs claims that SnoWizard purposefully avoided phone calls and emails from Raggs about its orders to prevent Raggs from supplying its customers. Further, SnoWizard, at the same time, was in communication with one of Raggs' customers, and not only sold its products to the customer directly, but also sold it for a discount from what SnoWizard normally would have sold it. And, only after this sale was completed, did SnoWizard respond to Raggs inquiries about SnoWizard's refusal to ship Raggs' orders. In contrast, the defendant in *Purina* invited the plaintiff to participate in sales calls to customers and gave the plaintiff warnings before terminating the business relationship.

The Court finds this case more analogous to *Chemical Distributors, Inc. v. Exxon Corp.*[121] In that case, the plaintiff, ("CDI"), brought suit under LUTPA, alleging that the defendant, Exxon,

---

[117] *Id.*

[118] *Id.*

[119] *Id.* at 1423-24.

[120] *Id.* at 1424.

[121] 1 F.3d at 1478.

breached their contract for the purchase, sale and delivery of soap products.[122] The contract allowed Exxon to purchase soaps from another seller, but CDI had the right to match any price offered by a third party.[123] After a year, Exxon unilaterally canceled the contract. CDI brought suit, and a jury found that Exxon acted in bad faith and violated LUTPA.[124] Exxon appealed the decision and argued that the judge erred in sending the LUTPA claim to the jury.[125]  In affirming the trial judge, the Fifth Circuit specifically distinguished this case from *Purina*.[126] The Fifth Circuit held that the claim of LUTPA was properly sent to a jury because unlike *Purina*, this case involved claims for breach of contract and alleged bad faith and deception.[127] In *Purina* the plaintiff did not pursue a claim for breach of contract nor could it show any "fraud misrepresentation, or deception." But, in *Chemical Distributors*, CDI's allegations alleged deception and breach of contract, which the court could not say as a matter of law were deficient to implicate LUTPA.

While SnoWizard has cited case law that demonstrates LUTPA's narrow range, nevertheless, other courts have allowed LUTPA claims to be presented to a jury to determine whether the defendant's conduct implicated LUTPA or "whether said actions [were] simply an exercise of justified business activities."[128] Like the claims in *Chemical Distributors*, Raggs allegations include a breach of contract and deceptive behavior by SnoWizard for its failure to communicate with

---

[122] *Id.*

[123] *Id.*

[124] *Id.* at 1481.

[125] *Id.*

[126] *Id.* at 1485.

[127] *Id.* at 1485-86.

[128] *Id.*; *see also Jefferson*, 713 So.2d at 793.

Raggs. As such, this claim should be sent to a jury to determine if SnoWizard's behavior implicated LUTPA, and therefore SnoWizard's motion for summary judgment on this issue is denied.

## IV. Conclusion

SnoWizard's motion for summary judgment regarding Raggs' counterclaim for breach of contract must be denied because the existence of a contract is a finding of fact and a material one in dispute here.  Regarding Raggs' claim of tortious interference with business and contracts under Texas law, Raggs has raised a question of fact as to SnoWizard's intent regarding its delay in responding to Raggs' orders, thus preventing summary dismissal on both of these counterclaims. In considering summary judgment on Raggs' claims pursuant to LUTPA, Raggs has pled facts that could plausibly lead a jury to determine that SnoWizard's actions were "egregious" or "offensive to public policy," and therefore the LUTPA counterclaim cannot be dismissed on summary judgment and therefore SnoWizard's motion for summary judgment on this claim must be denied.

On the other hand, in Raggs' counterclaim for unfair business practices under the federal Lanham Act, Raggs does not allege any confusion on the part of consumers, an essential element for this cause of action, and Raggs' allegations do not fit within the purview against which the Lanham Act was intended to safeguard. Further, Raggs fails to address this claim in its opposition to Snowizard's motion for summary judgment. Therefore, SnoWizard's motion for summary judgment on this issue is granted and the counterclaim is dismissed.

**IT IS HEREBY ORDERED** that SnoWizard's Motion for Summary Judgment on Raggs' Remaining Counterclaims[129] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, SnoWizard's motion is granted as to Raggs' counterclaim against SnoWizard for unfair business

---

[129] Rec. Doc. 127.

practices under § 43(a) of the federal Lanham Act. SnoWizard's motion for summary judgment is denied as to Raggs' counterclaims against SnoWizard for breach of contract, tortious interference with business and contracts, and violations of LUTPA.

**NEW ORLEANS, LOUISIANA**, this 24th day of September, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

27